and Andrea Pridham. I'll be the only counsel speaking on behalf of the appellants this morning and would like to reserve five minutes for rebuttal. This case involves the appeal of a class action settlement in the Ferraro-Natello litigation. I've grouped my arguments into three groups, which I'd be prepared to address in any order the Court would like. First is the substance of the settlement itself, basically weighing the cash fund and the value of the injunctive relief against the risks of litigation and that the class could ultimately prevail. Second would be everything dealing with the attorney's fees in terms of whether there's a constructive common fund, if the settlement of separating attorney's fees for injunctive relief is proper. And then finally, what I'm calling the due process issues, basically notice issues under Rule 23H, the due process duty to make the adequacy determination under Rule 23A, and the due process obligation to make specific findings of fact so that the parties know what was and what was not considered by the district court. Well, Anya, you're taking the last first. The objectors, you know, lack of notice claims, there seems to be a good argument that they failed because the objectors had notice of the particulars of the request for counsel fees, declined to offer any additional arguments or facts at the hearing on the settlement agreement, and on appeal don't offer any specific rates. So I'm just, the due process part of it, if you had been given more notice, what would you have done? Because you, at a point where you were asked, is there anything more that you want to do, you didn't do anything more. Well, first of all, I don't know that that's, that we didn't do anything more. The due process is for the class as a whole, correct? In other words, other class members, and one of the only three objectors came forward and objected. Well, the paucity of objections is obviously a function of notice. If class members have to go on to PaySir and pay $12 to download fee papers over a $4 jar of Nutella and an $8 claim, nobody's going to do that. There might have been more objections to fees if the fee notice had been put on the settlement website. Oddly, you have a settlement website that does not post the fee notice. So objectors would have had to go out of their way. So this is not for us, per se, but for the whole integrity of the class action process and the fairness of the settlement as a whole. Other objectors... That seems pretty phantom, though. To require that class counsel put a fee notice on the website? No, but you don't, but you were there, you didn't offer anything additional, and you're not still saying what else would have been offered. So if you want to get us up in arms about what could have been said, nothing's still been said. Well, we believe that the constructive common fund should be imposed, so that the $900,000 that Ferraro agreed to pay in attorney's fees and the $550,000 cash fund should be combined to create a $1.4 million fund, and then class counsel would petition against that in accordance with Bluetooth, because all of the cash, this is the holding of GM trucks, this is the holding of Staten that you don't look at in value injunctive relief. So first of all, we would argue and did argue that there should be a constructive common fund. Secondly, we argued the injunctive relief was worthless, and so that no fee should be earned on the injunctive side. So what's a constructive common fund? A constructive common fund is when you take all the cash that the defendant is willing to pay to resolve the litigation and count that as a common fund for the benefit of the $550,000 for the class, and then we're getting... So this all goes to calculating attorney's fees, right? The constructive common fund... That all goes to that? Correct. You know, you started by saying you had three issues. The first one was challenging the... Substance. Substance. And I went to you, I didn't remember that you had something like that, so I went to your brief and I find there's no table of contents. Is there some reason you left out the table of contents? From the opening brief? Do I just have a bad copy of the brief? I think you do, Your Honor, and I apologize. Okay. There is a table of contents. It must be my copy of the brief was misbound. Oh, okay. I'm sorry. My three arguments are for oral argument today. Now your brief. Good luck. My colleague says good luck. Yeah, he doesn't have an I either, so you will file conforming briefs? Of course, Your Honor, I apologize for that. I don't have one, Judge Strada doesn't have one, so this is more than an accident, and Do you have a table of contents? Can I have it? Yes. Okay. Again, I apologize. I'm sorry, so which heading here deals with the substance? I thought everything you said went to attorney's fees. I'm just... The heading dealing with the substance is heading argument two, beginning on page 19, about including the purported value of the injunctive relief as part of the common fund. But that goes to attorney's fees. You started out by saying that three things were challenging. Two of them had to do with attorney's fees. The first one was were challenging the substance of the settlement. I was surprised because I didn't remember that in your brief. So I went to the table of contents, which I didn't find, and I'm looking at the table of contents, and it has nothing like it. And if it's not in the table of contents, maybe you can show me where in the brief itself you argue about the substance. Because this is new to me. Yes. Beginning on page 19 of the opening brief, we say under argument two, in the sentence beginning on page 19 and continuing to the next page, appellants have challenged the notion that the injunctive relief provided any benefit at all to the class and their objections below, and it prevented evidence that it will harm rather than help class members in the general public. But your first sentence under that says class counsel sought to justify its excessive fee by. Yes. So this does not seem to me to be a challenge to the substance. I don't know if this works for you, but you started off, the first word out of your mouth pretty much after good morning was something that I did not see in the brief. And if it is not in the brief, it's not before us, and you can't talk about it. And then I have a follow-up question about attorney's fees, if that is in fact not before us, if the substance settlement is not before us. Okay. So maybe you want to file a 28-J or something afterwards pointing out where this is in the brief. But assuming it is not, the substance is not in the brief, you haven't challenged the substance, why do you have standing? Why do you have standing to challenge the fee award at all? It's one thing to challenge the settlement, I mean you're an objector and so on, but any money that is reallocated that does not inure to the benefit of your clients, all you would be doing is taking, if you succeed in your argument, is taking money out of the pockets of counsel for that aside and putting the money in the pockets of forever. In which case, why do you have standing to argue this? Why haven't you essentially, no case of controversy here before us, and why shouldn't we dismiss this appeal for lack of standing? Several reasons. Okay, first of all. Why don't you start with one good one. Okay. And if you succeed with one good one, we don't need to hear the rest. We challenge the reverter slash kicker provision pursuant to Bluetooth. We believe that the court can and should invalidate the kicker provision, which would revert the money to Nutella. That's one argument. The second portion is that there was 15% that was removed from the common fund in addition to the $900,000 Lodestar. As a practical matter, that's only a $8,000 to $5,000 claim for the class, but they got it. You don't need much for standing. That would be more, that would be, if the court found that it was improper to double dip, to both take a Lodestar recovery and then a percentage of the fund, that would be returned to the class. If the court invalidated the entire. Is that a fact? I don't know. I believe it would be because it was taken out of the fund to begin with, and so it would be, it would remain in the fund. It would just be the attorneys would be ordered not to allow to double dip. But I do want to impress upon the court the authorities that we cite on page 27 of our brief about a common constructive common fund. The third circuit in the Enright General Motors case is the court that used the phrase constructive common fund. It goes on to say, in our parenthetical, we quote the court, private agreements to structure artificially separate fee and settlement arrangements cannot transform what is an economic reality in the common fund situation into a statutory fee shifting. We then cite Johnson v. Co-America from the Eighth Circuit. And then on the next page, the Manual for Complex Litigation that says, if an agreement is reached on the amount of the settlement fund and a separate amount for attorney's fees, that the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed upon fee being the upper limit of fees. So I would ask that this court join the Third Circuit and the Eighth Circuit and follow the advice of the Manual for Complex Litigation and endorse explicitly the constructive common fund doctrine to avoid exactly the problem of structuring a settlement where attorneys basically get paid large sums of money on the injunctive side for injunctive relief that is of questionable or limited value. Why don't you explain to us why we should do that? Isn't that contrary to the whole notion that district judges exercise discretion, they supervise the litigation? This was a hard-fought case. There was a great deal of discovery. There were, I believe, three settlement conferences? I mean, this case didn't just collapse. What was discussed at those settlement conferences, I think, is a question. There was battling among lawyers for control of the case. Well, but the class got certified, so there probably had to be a fight about the certification, right? There was argument by the defendant in the district court that it was inappropriate to certify a nationwide class, and a California-only class got certified. There was never, for instance, an adequacy determination made. The defendant did not challenge adequacy. But it's not like nothing happened here. And then if you look at what the people here, okay, is it $4 a bottle for Nutella or $5? The class members can claim $4 a bottle up to $20. Up to $20. Correct. Okay. And so it's not a situation where anyone died from the Nutella. Correct. And basically, you know, you're claiming that the injunctive relief, which required that they change some of the labeling, the advertising had to be changed, it seems like that you're saying that's meaningless, but it seems like the people that were pushing this, it's not as if they had these horrible injuries. It's more that they think they bought something that it really wasn't what it was advertised to be. So why isn't the injunctive relief requiring them to have different labeling and not be able to advertise in the same way? Why isn't that exactly what they set out to do? I mean, they were never going to get rich over no one died from the Nutella. First, it benefits a different group of people, some hypothetical group of future Nutella purchasers, not the people that were misled by deceptive labeling. Second, the defendant implemented the changes anyway. They have a bottle of Nutella sitting at council table because they're moving on. One of the things the district court in New Jersey found was that advertising campaigns basically go stale after two years anyway. Nutella's moved on. I actually saw their commercial last night. They've now moved on to spread the happy. This change on this bottle of Nutella has already been implemented. So to the extent there was a benefit, the class members and everybody else has already benefited. Well, so should everyone have gotten $100,000 per every bottle of Nutella that they bought? That's a damages question. That's a damages question, which is an important one. Now, the Supreme Court said in Boeing v. Gambert, in order to value injunctive relief, it has to be undisputed and mathematically ascertainable and not generally for redressing general social grievances. And that's cited on page 21 and 22 of our brief. What does all of this have to do with 23H? 23H is a separate issue. That's the only one that you raised. With respect to? Statement of issues. You identify one issue in your brief, whether the district court violated federal civil procedure 23H, which requires motion. That's the only issue that you identified. Then the other side says pretty much that you've abandoned any issue except 23H, and then you come back in your reply brief with the same thing, and all you do is talk about 23H. Do you not have page 2 of my brief? Was the brief that badly assembled? Because if so, I'm astounded. No, we got the statement. There's issue 2, whether the district court erred is a matter of law. Okay, I see what you mean. The value of the injunctive relief, which did not provide a direct ascertainable value to the class, which I think is where we also argue that it was meritless. And then we argue 3, we say that basically she just did a quick two-page oral, everything's fine, and a quick little order, so that doesn't comply with cowers and the duty to set forth and evaluate the current Viziano factors. Let me get back to the point we were discussing a little bit earlier. Whatever we may think about what the Diffie judge did in this particular case, you were urging us to adopt a rule for the 9th Circuit, and that's pretty significant stuff that requires the creation of a constructive common fund. Yes. Okay, and it just runs contrary to the whole notion that district judges have discretion, and that a constructive common fund may be appropriate in some cases and not in others. And I'm still not, I'm not persuaded. Maybe I can save my four minutes and think of something for rebuttal. I mean, just think about it. You're asking us to adopt a rule that is contrary to the basic notion that district judges have discretion to manage the case before them. They have particularly wide discretionary injunctive when dealing with injunctions, and they have particularly wide discretion in dealing with class actions. Maybe you want to sit down and answer that. I would have addressed that really quickly in my rebuttal time before I sit down, because what I'm actually asking the court to do is reverse the determination and remand for a variety of reasons, including failure to make findings under current viziano, failure to make adequate determinations. I understand you have other issues. I've been invited before. I understand you have other issues, and I'm not asking you to abandon the other issues, but you were specifically asking us to adopt a particular kind of rigid rule that to my mind, I'm not asking you to abandon it. I'm just giving my skepticism about it, so I want you to be able to address it. Why should we adopt a rule like this that runs contrary to the way the- Understood. Courts of appeals and district courts normally operate? I will address that in the three minutes I have saved. Thank you. Thank you.  Class counsel. Yes, good morning, Your Honors. May it please the court. Jack Fitzgerald on behalf of plaintiffs' appellees, Laura Rue Barbato and Athena Hunenberg. Ferreira's counsel has graciously allowed me to take three extra minutes out of the 20 minutes, so I'll be speaking for 13 minutes and him for seven minutes. As Your Honors are familiar, this was a hard-fought litigation. There was a great deal of discovery. We went through a class certification motion that was vigorously opposed by Ferreira. We had three settlement conferences, all of them with federal judges, one a former retired district judge and two before Judge Benson-Vango, who at the time was a magistrate judge, on the case in the Southern District. She's now been elevated to district judge. There was also a similar litigation that took place in New Jersey, and the settlement kind of went along with that, and that settlement also got preliminary and then final approval. So basically you've had four federal judges who have had their eyes on this settlement, and it only settled after vigorous litigation and after class certification. So I think the appellants here have a very hard presumption of fairness and reasonability to overcome. Well, they say they argue that the injunctive relief just isn't meaningful here. Yeah, that's right. Would you be good enough to take that mic and just point it more towards you? Yes, Your Honor. I'm sorry. When you sort of get out of range, you fade out. Yes, Your Honor, I'll try to stay in range. You have a sort of softer voice than some people. Thank you. Thank you. Yeah, they address the injunctive relief now, although the appellants came up here and said that they were addressing it as a matter of the substance of the settlement. In fact, in their brief, it's addressed as a matter of adequacy. The argument they make is that because the injunctive relief was supposedly illusory, that implicates the adequacy of class counsel in assenting to that injunctive relief. And I'd point out a couple of things. Number one is they're only talking about one aspect of several tiers of injunctive relief, which is the statement on the Nutella bottle itself and the way that it was changed. In addition to that, Ferrer also agreed to put on the Grocery Manufacturers Association of America's front labeling where it prominently displays the calories, the saturated fat, the fat and the sugar in the product, which was basically the basis of the claims here, was that they were hiding these sort of detrimental ingredients and touting it as healthy. So they agreed to change the slogan on the bottle. They agreed to disclose the ingredients more prominently. They agreed to reshoot three commercials, get rid of the three commercials they were airing. And they made extensive changes to the website. And incidentally, the district court, in one of the motions to dismiss, found that we had no standing to challenge the website. So that's something we got where we couldn't have even gotten that if we had gone to trial at this point. So they're really only talking about the slogan. Now, as far as the slogan... I'm curious. Why didn't you have standing? I'm sorry? Why wouldn't you have standing for the website? The district court found that... I'm not saying you agree or disagree. I'm just curious. Yeah, we don't agree, but the district court found that the plaintiffs themselves hadn't relied on the website and therefore didn't have standing to... Okay, that's fine. So the slogan went from Nutella part of a balanced breakfast to turn a balanced breakfast into a tasty one. And they think that's illusory and it says the same thing. We disagree. I think, you know, the definition of the word turn is to change. So it changes a balanced breakfast into a tasty one. You know, we don't think there's a problem. In any event, the district court looked at it. It did. The district court looked at it and considered the objector's arguments, considered the objector's evidence that it entered, and it rejected this. And I think especially in light of all the injunctive relief here, it's just the district court exercised its discretion. It did not clearly abuse its discretion in approving it. So the label after when it was changed, what does it say that it didn't say before? It now says turn a balanced breakfast into a tasty one. But you said it also there's calories and... Right, it also discloses there's grocery manufacturers of America has a program. You might see it now on a lot of different things. It's kind of green and on the front of labels of foods. It's on M&M's now, for example. Oh, it must be good then. Yeah. It's actually on a lot of junk foods now, and that's the idea is to try not to avoid a misleading impression. So you put a green label on junk food. Well, the green label has numbers in it. So it says calories, how many per package, sugar, how many grams per serving, fat, how many grams per fat. So it's disclosed prominently as opposed to in the smaller type on the back, on the nutrition facts box where the FDA requires it to be disclosed. I was in the store the other day and tried to read that small print or something like that. Right. I had to borrow somebody's glasses. This is a step in the right direction. Yeah, so it's a step in the right direction, right. In addition to that, they had a child nutrition expert who was opining on the website that Nutella was a good start for kids' breakfast and things like that, and we thought that was pretty egregious. And even though we didn't have Stan, we did get them to agree to remove all that content, remove any references to it being healthy, and really to focus on the taste of the product. What do you say about their suggestion, which I spent some time discussing with opposing counsel, that we ought to adopt what the Third Circuit has done in the Constructive Common Fund? Yes. I mean, I expressed my skepticism to him, but tell me what you read. Right. This court has many times given district courts the discretion to apply the Common Fund Doctrine or the Lodestar, and depending on the types of cases, some make sense more than others. This is a case where the Lodestar really makes sense because it's basically what's called a negative value case. The amount that we were able to achieve for the class wasn't a function of poor lawyering. It was a function of the limited sales during this two-and-a-half-year period in California. As we pointed out in our papers, we actually got a much better deal for the class on a per capita basis than the 49-state class did. But in any event, I think General Motors and Johnson & Johnson Well, that's because they have a bigger class. They have 49 states, right? That's right. So, I mean, yeah, I guess there's some efficiencies of scale that get lost in that size. But the district court didn't really – you can't say it's really an extensive explanation. It's not an extensive explanation, I agree. But it certainly, I think, comports with Hensley and its progeny, including Cunningham v. City of Los Angeles, where the court said that the district court only needs to make a clear and concise explanation of the reasons that it arrived at that. The court certainly did that. It's spelled out there that the factors are there. The factors are correct. Going back to the constructive common fund question, I just do want to point out that in General Motors and in Comerica, both of those cases said that in fee-shifting cases where the legislature has made a fee-shifting statute that promotes social benefits like the CLRA, that the Lodestar is the appropriate way to proceed. Those cases were coupon settlements where there wasn't a fee-shifting statute. And so the constructive common fund made more sense there. But if you're fairly right, I think those cases support our point, especially on page 821 of the General Motors decision. I see I'm over my time. Unless the court has other questions for me, I think I'll yield to Ferrer's counsel. You were going to take how long? You go down to seven. Oh. You're taking 13. There I am, rushing and thinking that I was, okay. You're having so much fun. But, you know, every word you say is a chance you take. Just like secret agent man, maybe if you're done, maybe you should sit down. Well, unless the court has other questions for me, I think I'll take that advice. If there's any time left after Ferrer's counsel and you wish to get up again and you've decided, you know.  Thank you, Your Honors. Thank you. May it please the court. Keith Eggleton on behalf of Ferraro USA. I'm going to be brief. I only want to address one question this morning, which is what the panel can and should do with the underlying settlement, regardless of what it determines with respect to fees. As the court has indicated, throughout the process here, fees were the primary issue. That was true from the time the objectors came in. It was true in the district court, and it's true in the briefing here on appeal. Frankly, I was a little unsure of whether the core of the settlement was being challenged, which is why we put in a brief talking about the core of the settlement. Obviously, if it's not before this court, if the core of the settlement is not before this court, that's one reason the issue won't be reached. And if you do something on fees, you don't have to reach the core of the settlement. But if you do, I would suggest that the court can and should affirm the underlying settlement, regardless of what it may do with respect to fees. The underlying settlement, as you know, has several components. One was a monetary fund set up for class members to make claims against. It's set up, and the claims process has happened. The second was injunctive relief, which was always a core part of the case from the plaintiff's perspective. They always wanted injunctive relief to come out of the case. And the third was a mechanism, and that's what I call it, a mechanism by which plaintiffs could approach the district court with respect to their fees. That's all it was, was a mechanism. It allowed for the plaintiffs to apply to the district court for a portion of the settlement fund, if they chose to. And it also allowed them, if they chose to, to ask for money in compensation for the injunctive part of the settlement. The settlement, unlike Stanton, which the objectors rely on, this settlement in no respect preordained what the district court would do with respect to fees. We didn't give a package deal to the district court. We didn't try to – we did not, for our own – the plaintiffs either tried to value the injunctive relief going into the settlement. That was left to the discretion of the district court. Do you know what happened to Stanton when it went back to the district court? If I do, I've forgotten. Boeing said, we're not settling anything. We're going to trial, and Boeing won. Just a curiosity, side curiosity. If the story went in that way, maybe I'd ask for different relief today. I guess your position is you want to stick with the settlement, and you secretly hope objectors win on the fee thing, so you can have to pay less fees. You know, I understand why you say that. The reality is when you enter these settlements and you negotiate an up-to number, you're willing to write that check if the district court believes the work was worth it. You're willing to do it. That's part of the deal you strike. You're willing to do it, but you vest in the district court the discretion to do that. I guess the true bottom line is you want to be done with it. We want to be done with it. That's the deals we cut in the two different cases. From my client's perspective, what happened here was unfortunate in respect. We ended up with two identical cases, essentially, in two parts of the country. We tried to get them together. We failed at that. So we had to litigate two cases in two different parts of the country, 49 states and New Jersey and California here, costly. So, yes, we want to be done with it. And to respond to one question earlier, we actually very strongly contested class certification in California, not just on the grounds that it couldn't be a nationwide class. We argued it couldn't be certified at all under the Walmart decision, even as the California residents. We lost. I'm still sorry we lost, but it was highly contested. I'm happy to submit. Thank you. Okay. I think we have some time left on the clock. When 78% of the fund and the money that the defendant is willing to pay to make the case goes away, goes to the attorney's fees, then maybe the focus should be on attorney's fees. The district court did not do its job in scrutinizing the adequacy of counsel, did not make findings under Viziano, did not apply the curve factors for determining a lodestar, did not do any of that explicitly. To just have a two-page order that recites the provisions of Rule 23, when all three indicia of Bluetooth were here, a clear-scaling provision, a kicker and a reverter, and the class counsel getting most of the money, and a fourth one that we proposed, this quick pay, where the lawyers get paid and the class has to wait, which we filed a supplemental authority on yesterday from the Pebble Windows case that came out of the Seventh Circuit on Monday. So the lawyers got most of the money. The district court basically rubber-stamped it. All the issues that you're talking about were before the district court, and the district court was aware of all those issues. Is that right? And the district court made no, yes. For instance, the district court did not address the affidavit of Dr. Friedhoff that said that this labeling change is meaningless and possibly worse. Is it possible that the district court did consider all of those issues and just ruled the other way? We don't know because the district court didn't say anything. Maybe we should just send it back and say, be explicit. Absolutely. That's one of the things we asked for on three separate issues is that there needs to be explicit findings, applying PURR, applying Viziano, doing a lodestar cross-check, and making that determination. And those have to be explicit? Yes, otherwise the court has nothing to review. You don't know what the district court did and didn't consider. They argued in their briefs below that the statement, the value of the cost to the defendant of compliance, should be the measure of valuing the injunction, clearly improper. If the district court did consider that by saying, I considered all the briefs, this court doesn't know if it relied on an improper factor. So the economic realities are the defendant is willing to pay $1.5 million to make this case go away. And I'm very cognizant of what Your Honor said about what happened in Staten. And so I'm going to make it, we're here for the benefit of the class and only for the benefit of the class. So I'll make it very clear then that since there was an ambiguity, Your Honor, in the record about the substance, we're saying that the injunctive relief is valueless and therefore it shouldn't be considered in awarding the fee. We're not saying that the whole settlement should be vacated. Paragraph 55 of the settlement agreement explicitly says, notwithstanding any other provision of this agreement to the contrary, including defendant's right to veto, the procedure for the allowance in whole or in part of the court by the application for class counsel's attorney's fees to be paid directly by the defendant as part of the injunctive fee award or out of the gross settlement award is to be considered by the court separately and apart from its consideration of the fairness, reasonableness, and adequacy of the settlement. And any order proceeding relating to an award of fees or expenses or any appeal to an order therefrom shall not operate to terminate or cancel this agreement and settlement. So if Your Honor does remand, 55 gives the court the freedom to remand on fees only without touching all the other things that I think might benefit the class. There's been some negative developments in the law in the last two years. And if there was a full remand, I'll be perfectly candid with the court, it becomes a very tough case. And we're not trying to deprive the people that have claimed in of their money. We're trying to get them more money because we believe the attorneys' fees have overreached. I'm not understanding. I mean, you sort of spewed it out in one breath. You're saying we could remand on fees without touching the settlement? Correct. Paragraph 50, because of the rules. Stop. You don't want to- Stop, stop, stop. I just want to make sure we're on the same page. Okay. But then if it goes back, the settlement would stay in place and we'd just be litigating fees? And whether those fees go to the class or whether they revert to the defendant? Exactly. And the court needs to make the determinations under fees that are required by Kerr and Viziano and say whether she's applying the Lodestar or the Common Fund or both. Here she applied both. The Lodestar request was $900,000 and then 15%- I'm still pondering the question of standing, but I see what you're saying. So that would send the thing back, and some of the fees might then go to the class. So that's how you- Correct. But you're saying you don't want to snatch defeat from the jaws of victory and set aside the settlement because you might never certify this class again? Nobody might ever certify this class again, and some of the law about ascertainable relief that has developed in the two years since the case came down would be dangerous to the class. And as someone that's here really trying to hope the class gets more money, I do want to be candid with the court that that is a very serious risk. We think the attorney's fees overreached when they got 78% of the fund. We think the case should be remanded and the attorney should get 25% of the fund, the class should get the rest, and the case should be over. And then everybody except class counsel, I suppose, would be happy. Okay, thank you. Cases are you stand submitted? That was the last case on the calendar, so we're adjourned. All rise. This court for this session stands adjourned.
judges: KOZINSKI, TROTT, CALLAHAN